# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# NORTHERN DIVISION

| | | |
|---|---|---|
| AMERICAN FAMILY MUTUAL INSURANCE COMPANY S.I., | ) ) ) ) | |
| Plaintiff, | ) ) | Case No. 2:18-cv-00051-HEA |
| v. | ) ) ) | |
| MID-AMERICAN GRAIN DISTRIBUTORS, LLC, LEHENBAUER FARMS, INC., and JOHN AYER, | ) ) ) ) | |
| Defendants. | ) ) | |

## OPINION, MEMORANDUM AND ORDER

This matter is before the Court on Plaintiff's Motion for Summary Judgment [Doc. No. 16]. Defendants oppose the Motion. For the reasons set forth below, the Motion for Summary Judgment will be granted.

### Background

In February, 2015 Mid-American and Ayer entered into an oral contract with Lehenbauer for the design and construction of a grain storage and distribution facility [Doc. No. 25]. Mid-American and Ayer began work under the contract in or around February 2015. They continued their work under the contract until on or about March 15, 2016 when Lehenbauer terminated the contract with Mid-American and Ayer. [Doc. No. 17]. Mid-American filed suit against Lehenbauer

on July 15, 2016 in the Circuit Court of Marion County, Missouri for breach of the contract and sought damages from Lehenbauer. [Doc. No. 25]. Lehenbauer filed its counterclaim on August 29, 2016, followed by its amended counterclaim on or about September 5, 2018.

American Family issued a "Business Key Policy" to Mid-American, which included commercial general liability coverage ("CGL"). The policy was in effect from June 14, 2014 to June 14, 2015 and was renewed for the 2015-2016 policy period. The underlying claims of the lawsuit include Breach of Contract, Negligence, and Unjust Enrichment.

American Family's motion for summary judgment is limited solely to the dispositive issue of whether the counterclaims allege an "occurrence" under the applicable American Family insurance policy.

### Summary Judgment Standard of Review

The Court may grant a motion for summary judgment if the movant shows that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The substantive law determines which facts are critical and which are irrelevant. Only disputes over facts that might affect the outcome will properly preclude summary judgment. *Anderson v. Liberty Lobby,*

*Inc.,* 477 U.S. 242, 248 (1986). Summary Judgment is not proper if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.*

A moving party always bears the burden of informing the Court of the basis of its motion. *Celotex*, 477 U.S. at 323. Once the moving party discharges this burden, the nonmoving party must set forth specific facts demonstrating that there is a dispute as to a genuine issue of material fact, not the mere existence of some alleged factual dispute. *Anderson*, 477 U.S. at 247. The nonmoving party may not rest upon mere allegations or denials of its pleadings. *Id.* at 256.

In passing on a motion for summary judgment, the Court must view the facts in the light most favorable to the nonmoving party, and all justifiable inferences are to be drawn in its favor. *Id.* at 255. The Court's function is not to weigh the evidence but to determine whether there is a genuine issue for trial. *Id.* at 249.

Summary judgment is appropriate when, viewing the facts and inferences in the light most favorable to the nonmoving party, the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. In order to survive a motion for summary judgment, "the nonmoving party must 'substantiate his allegations with sufficient probative evidence [that] would permit a finding in [her] favor based on more than mere speculation, conjecture, or fantasy.'" *Barber v. C1 Truck Driver Training, LLC*, 656 F.3d 782,

801 (8th Cir. 2011) (quoting *Putman v. Unity Health Sys.*, 348 F.3d 732, 733-34 (8th Cir. 2003)) (internal quotation marks omitted).

## Discussion

American Family argues that none of the claims in the underlying lawsuit (Breach of Contract, Negligence, and Unjust Enrichment) allege an "occurrence" under the American Family Policy and under applicable law. Defendants Mid-American and Lehenbauer contend that the design and construction defects caused by Mid-American's services are covered because it is an "occurrence," which is a covered event under the insurance policy.

American Family's policy defines an "occurrence" to mean "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." [Doc. No. 16]. Under Missouri law, an "accident" is defined as "an event that takes place without one's foresight or expectation; an undesigned, sudden and unexpected event. Hence, often an undesigned and unforeseen occurrence of an afflictive or unfortunate character; a mishap resulting in injury to a person or damage to a thing…" *Columbia Mut. Ins. Co. v. Epstein*, 239 S.W.3d 667, 672 (Mo. App. E.D. 2007) (quoting *West v. Jacobs*, 790 S.W.2d 475, 477 (Mo. App. W.D. 1990)).

The purpose of CGL policies like the one at issue is to protect against the unpredictable and potentially unlimited liability that can result from accidentally

4

causing injury to other persons or their property. *Columbia Mut. Ins. Co. v. Schauf*, 967 S.W.2d 74, 78 (Mo. banc 1998). A CGL such as this is not intended to protect business owners against every risk of operating a business. *Id.*

Under the definitions discussed supra, a breach of contract is not an "accident" and "occurrence." *American States Ins. Co. v. Mathis*, 974 S.W.2d 647, 650 (Mo. Ct. App. 1998); *West v. Jacobs*, 790 S.W.2d 475, 478 (Mo. App. 1990); *View Home Owners Ass'n v. Burlington Ins. Co.*, 552 S.W.3d 726, 731 (Mo. Ct. App. 2018). This is due to the fact that performance of the contract according to its specified terms was "within the [insured contractor's] control and management and its failure to perform cannot be described as an undesigned or unexpected event." *Mathis*, 974 S.W.2d at 650.

In *View Home Owners Association*, the underlying litigation concerned claims for breach of contract and negligence. In that case, the Court found that View, "had control and management over the property during the renovation. This naturally included the ability to resolve any alleged construction deficiencies in the property as well as remediate substandard work. Because the ability to resolve these construction deficiencies was within [t]he View's control and management, its failure to address them cannot be described as an 'undesigned or unexpected event,' and thus there was no 'accident.' Because there was no 'accident,' there was no 'occurrence,'" *View Home Owners Ass'n*, 552 S.W.3d at 731. There was no

occurrence as to both the breach of contract and the negligence claims. *Id.* The Court further found that because there was no "occurrence," under the insurance policy, the insurance company owed no duty to defend View.

In the underlying case, the purported cause of Lehenbauer's loss was due to Mid-American's negligent designing and building of the grain handling system. A breach of contractual duty of this sort does not constitute an "accident." *Mathis*, 974 S.W.2d at 650. Mid-American's performance of the parties' agreement was within its control and management. The failure to perform—i.e. the design and construction defects—does not constitute an undesigned or unforeseen event. *See Epstein,* 239 S.W.3d at 672 (quoting *West v. Jacobs*, 790 S.W.2d 475, 477 (Mo. App. W.D. 1990)). Similar to *View*, there was no "occurrence" because Mid-American had control over the property during its construction of the grain facility. This control includes the ability to resolve any construction or design deficiencies. Because the ability to resolve said deficiencies was within Mid-American's control, Mid-American's failure to address them is not an undesigned or unexpected event. Therefore, there was no "accident." Since there was no "accident," there was no "occurrence" under the CGL policy.

In *Cincinnati Insurance Company v. Fine Home Managers, Inc.*, 2011 WL 5154464 *2-3 (E.D. Mo. 2011), this Court found that there was no "occurrence" pursuant to the clear language of the CGL policy. The underlying litigation in *Fine*

*Home* concerned claims of negligence, breach of contract, and *res ipsa loquitor.* This Court explained that "[t]he purpose of CGL policies like the one at issue is to protect against the unpredictable and potentially unlimited liability that can result from accidentally causing injury to other persons or their property." *Id.* at *3. In that underlying case, the purported cause of loss was due to Fine Home's negligent cleaning of the home furnishings. However, the performance of the contract was within Fine Home's control and management, and the failure to perform does not constitute an undesigned or unforeseen event. *Id.* Therefore, no "occurrence" or "accident" occurred under the CGL policy.

The cause of Lehenbauer's loss was Mid-American's failure to construct the grain facility to the specifications of the oral contract. Mid-American constructed a grain facility with a multitude of design and construction issues, which Mid-American had the control to remedy. The above principles apply when the contract is oral as is the case here. *Bituminous Casualty Corp. v. Scottsdale Insurance Co.*, 2013 WL 5739034 (E.D. Mo.). As such, no "occurrence" or "accident" actually occurred pursuant to the clear language of the CGL Policy.

**Conclusion**

Based upon the foregoing analysis and the record before the Court, Plaintiff, American Family is entitled to judgment as a matter of law.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's Motion for Summary Judgment, [Doc. No. 16], is **GRANTED**.

A separate judgment in accordance with this Opinion, Memorandum and Order is entered this same date.

Dated this 17th day of April 2019.

_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE